FILED (M)
1992 JUN 23 AM 9:56
CLERK, U.S. DIST COURT
WESTERN DIST OF MICH
BY pc

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

File No. 2:91-cr-13
HON. DOUGLAS W. HILLMAN

JAMES CURTIS LEBLANC,

Defendant.
________________________________/

## REPORT AND RECOMMENDATION

Defendant was charged in a single count indictment with knowingly engaging in or attempting to engage in a sexual act with another person, less than 12 years of age, while on the Bay Mills Indian Reservation.

Now before the court is the defendant's motion to suppress statements. The defendant contends that statements he made on August 1, 1991, to Special Agent David Kleinpaste of the Federal Bureau of Investigation, should be suppressed. Defendant argues that the statements were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966) and its progeny. More specifically, defendant maintains that the investigating agent did not obtain a valid waiver of defendant's Miranda rights. According to the defendant, defendant invoked his right to counsel, yet the interrogation continued, in violation of Michigan v. Mosley, 423 U.S. 96 (1975). The Government responds that the defendant was fully apprised of his Miranda rights and that the defendant knowingly, intelligently, and voluntarily waived those rights.

-32-

On March 23, 1992, an evidentiary hearing was held before the undersigned in Marquette, Michigan. At the close of the evidence, the parties were asked to file supplemental briefs. Those briefs have now been received, and the matter is ready for decision.

Review of Testimony

At the hearing, both the defendant and the F.B.I. agent testified. The testimony established that following a period of questioning by Agent Kleinpaste on August 1, 1991, the defendant admitted to having committed the crime charged. Defendant then signed a written statement containing a confession. There is no question that the defendant was in police custody at the time of the statement, as he was incarcerated at the Chippewa County Jail serving time on an unrelated state conviction.

Agent Kleinpaste testified that on the day of the interview, he met with the defendant in the library of the jail. Kleinpaste testified that he began the interview by identifying himself and advising defendant of his Miranda rights. Agent Kleinpaste presented defendant with the F.B.I.'s standard form entitled, "Interrogation; Advice of Rights." The contents of the form were read into the record. The form contains a recitation of the Miranda rights, as follows:

> You have the right to remain silent.
>
> Anything you say can be used against you in court.

> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

Following a recitation of the rights, a heading entitled "Waiver of Rights" appears in all capital letters and is underlined. A waiver of rights follows, which contains a place for the suspect's signature. The waiver portion of the form states:

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Agent Kleinpaste testified that, in order to establish that the defendant could read English, the defendant was asked to read the first line of the Advice of Rights form. Defendant complied with no apparent difficulty. Agent Kleinpaste then read the advice section of the form to the defendant, pausing at the end of each sentence to ask the defendant if he understood. Defendant answered affirmatively on each occasion.

According to Agent Kleinpaste, defendant was then asked if he was willing to have a conversation with the F.B.I. agent, and if so, defendant needed to sign the form signifying his willingness. The waiver section of the Advice of Rights form was

read to the defendant, and he was invited to sign the form. Defendant signed the form.

At one point during the interview, the agent asked the defendant about the conviction for which defendant was presently serving a jail sentence. The agent determined that the defendant was not presently represented by counsel, but had been appointed legal counsel during the proceedings leading to the prior conviction. The agent testified that he asked whether defendant wanted to have that attorney present during the interview. The defendant indicated that his former attorney had instructed him never to speak with the police without counsel present. However, having made this statement, the defendant did not ask for counsel. Instead, though apparently recognizing that his cooperation would be contrary to his former attorney's advice, the defendant added that he wanted to talk to the agent.

The agent testified that the defendant expressed some concern about what was likely to happen to him if he was convicted of the crime under investigation. The agent testified that he informed the defendant about the existence of treatment facilities within the federal prison system, and he mentioned in particular the facility at Rochester, Minnesota. He told the defendant that this facility could provide treatment or help for persons convicted of such crimes. The agent testified that he told the defendant that prisoners are assigned to facilities appropriate for their particular situations. However, the agent testified that he had no knowledge of the Federal Bureau of Prisons' classification procedures, and made no promises to the defendant concerning the

likelihood that, if convicted, defendant would be assigned to Rochester.

The agent further testified that there was discussion concerning whether defendant's cooperation with the investigation might result in a more favorable outcome. Having in mind the 2-point reduction in the sentencing guidelines score for cooperation, the agent asked the defendant whether he thought there was a difference between those who cooperate with the government's investigation and those who do not. The defendant responded that he thought the person who cooperated would likely be dealt with more leniently. The agent advised the defendant that he would report defendant's cooperation or non-cooperation to the United States Attorney or to the court.

After a period of questioning, the agent prepared a written statement for the defendant's signature. The defendant read over the statement and made several revisions, which were initialed by the defendant. The defendant signed the statement as revised.

The agent was excused and defendant took the stand. His testimony at the suppression hearing was, in most respects, consistent with that of the F.B.I. agent. The defendant testified that he did read the Advice of Rights form, and indicated that he understood his rights. He conceded that he knew he had the right to an attorney. However, he testified that when he signed the form, he thought his signature meant only that he had been advised of and understood his rights. Defendant testified that he did not

realize that, in signing the form, he was indicating his waiver of those rights.

The defendant further testified that when the agent started asking questions about the matters then under investigation, defendant told the agent that he had been advised by his former attorney never to talk to the police without an attorney present. Defendant testified that his words were to the effect of, "My attorney told me I shouldn't say anything without an attorney present." When asked during the hearing what he wanted the agent to do in response to this statement, the defendant answered, "I don't know, end it, I guess." Later the defendant indicated he was "hoping" the interview would end. However, he never asked that it be terminated or that an attorney be present.

The defendant indicated that in response to the statement, the agent suggested that he could arrange to have defendant's former attorney present, but that he wanted to get the matter closed up, and wanted to be able to tell the Prosecutor that defendant had been cooperative. The defendant indicated he was anxious and experiencing a number of emotions during the interview, and he didn't "feel too right" about it. However, he felt relieved that it was coming out into the open. He decided to continue, saying: "Okay, let's get it over with."

According to the defendant, the agent then began to ask about prior convictions. The defendant asked what would happen to him if he cooperated. According to the defendant, the agent told him about a "good place" in Rochester, Minnesota, which was "like a hospital prison," where inmates received treatment and some even

had jobs. Defendant conceded that he was not guaranteed placement at Rochester, but that the agent "hinted" that defendant could go there. Defendant testified that he started feeling better after hearing about Rochester.

The interview lasted approximately two hours and occurred during the mid-day. The agent testified that the defendant was allowed to smoke and to move about the room. He wore no restraints. According to the agent, the atmosphere was conciliatory. During the interview and at the hearing, defendant expressed no dissatisfaction with the surroundings or the tone of the interview. Rather defendant testified he was pleased to be out of his small window-less cell and in a larger room with windows for the first time in several months. The entire course of events was witnessed by an officer from the criminal investigations unit of the Bureau of Indian Affairs, Levi Carrick.

At the time of the interview, defendant had two prior arrests and convictions. He has the equivalent of a high school diploma.

## Discussion

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that a person in custody has the right to be informed of his right to remain silent and his right to the assistance of counsel, and to be informed that any statements made may be used against him. If a person asks for counsel, the interrogation must cease until counsel is present. Michigan v. Mosley 423 U.S. 96, 104, n.10 (1975). In contrast, there is no such *per se*

proscription against further questioning by officers when a person in custody indicates a desire to remain silent. Id. at 103-04. The rationale behind the distinction is that by invoking one's right to counsel, one has indicated a desire to deal with the police only through counsel. However, a person who invokes his right to remain silent simply exercises his ability to cut off questioning at any point and thereby control "the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." Id.

An explicit statement of waiver is not invariably necessary to support a finding that the defendant waived his Miranda rights. See North Carolina v. Butler, 441 U.S. 369, 375-376 (1978). Waiver can be inferred from the words of the accused and his course of conduct where it is clear that the defendant understood his rights. Id. However, waiver cannot be established merely by showing that the accused participated in the interrogation by answering questions posed to him. Edwards v. Arizona, 451 U.S. 477, 484 (1981). This court must presume that the defendant did not waive his Miranda rights. Butler, 441 U.S. at 373. The burden is on the Government to demonstrate that the defendant knowingly and intelligently waived his right to remain silent and his right to counsel. Id.

In the instant action, there is no question that the defendant was informed of his rights prior to the commencement of in-custody interrogation. Furthermore, in the opinion of the undersigned, there is no question that defendant was fully aware of

his Miranda rights and understood them prior to the time when any incriminating statements were made.

Defendant maintains that he didn't realize he was waiving his rights when he signed the form. However, he concedes that he understood the rights which were printed on the Advice of Rights form. In particular, defendant admitted he knew he was entitled to an attorney. He testified that though he doesn't specifically recall reading portions of the form, he either read the entire form or it was read to him. The language used in the Advice of Rights form presented to the defendant for his signature includes only common, simple words, readily understandable to the average person, particularly a person with the equivalent of a high school education. Several of the sentences within the advice portion of the form advise the suspect that he is entitled to stop the interview at any time, and that he is entitled to have an attorney present. It would be difficult to imagine a way to make the language any more clear.

Likewise, the portion of the form which contains the waiver uses very simply language. Although that language does not contain the legal conclusion, "I waive my rights," the waiver section is prefaced by the title, "Waiver of Rights" and sets forth the elements of a valid waiver in simple, common, everyday terms.

Accepting as true defendant's own testimony that he read and understood the contents of the Advice of Rights form, which includes the waiver language, I find the defendant's testimony that he did not understand the meaning of his signature is not credible. I also find that the record does not establish that Agent

Kleinpaste had any reason to suspect that defendant's signature meant something other than a waiver. In the opinion of the undersigned, the agent was entitled to continue the interview upon gaining defendant's signature on the form.

The next question is whether or not defendant attempted to revoke his waiver when he informed the agent that he had once been advised not to talk to the police without counsel present. In the opinion of the undersigned, in the context in which it was made, the statement was not intended to invoke the right to counsel nor was the agent compelled to understand it that way. Defendant was offered the assistance of his prior attorney, but he rejected that offer. The nature of the statement and the context in which it was made suggests merely that the defendant was thinking out loud as he considered whether or not to tell his story to the officer. Defendant's testimony suggested that he felt uncomfortable going against the advice of that prior attorney, but that he decided to reject that advice as he wanted to talk about the matter and unburden himself, so to speak. Accordingly, he ultimately decided to "go along."

Defendant suggests that Agent Kleinpaste's hints concerning leniency and the possibility of incarceration in a hospital-type setting influenced him to cooperate. However, in the opinion of the undersigned, the agent did not act improperly. The Supreme Court has said:

> A confession, in order to be admissible, must be free and voluntary. That is, it must not be extracted by any sort of threats or violence, nor obtained by any direct or

> implied promises, however slight, nor by the extension of any improper influence.

Bram v. United States, 168 U.S. 532, 542-43 (1897); Hutto v. Ross, 429 U.S. 28, 30 (1985).

Despite this broad language, not all tactics used by government agents for the purpose of inducing confessions are impermissible. This is particularly true of officers' invitations of cooperation. Said one court,

> The Government is not forbidden to "buy" information with honest promises of consideration. [citations omitted] Such an offer requires the accused to weigh the cost in giving the government information about his criminal activity that it might not otherwise discover against the benefit in possibly receiving brownie points for cooperation. Rutledge may have thought that the government would discover the incriminating information anyway; if so, he would rationally rate the cost of cooperation as slight and the benefit as larger even though small in absolute terms, and he would confess. The government was not required to tell him that if he was wise he would shut up because it had no other source of information about the extent of his illegal activities. The policeman is not a fiduciary of the suspect. The police are allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties; they just are not allowed to magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible.

United States v. Rutledge, 900 F.2d 1127, 1130 (7th Cir.), cert. denied, 111 S. Ct. 203 (1990).

The test in determining the voluntariness of a statement is whether, considering the totality of the circumstances, the government obtained the statement with promises which were sufficiently compelling as to overbear the suspect's will. Hutto v. Ross, 429 U.S. 28, 30 (1976). Thus, the test is not simply a "but-for" causation test. Hutto, 429 U.S. at 30; United States v.

Guerrero, 847 F.2d 1363, 1366, n.1 (9th Cir. 1988). If the defendant's confession was the result of a considered appraisal of the risks and benefits, and was not based upon false information or other coercive pressures which under all the circumstances were likely to seriously distort his ability to make a rational choice, the statement was not impermissibly extracted. Rutledge, supra; United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir. 1978).

Defendant maintains that the suggestion of leniency and/or the reassuring images drawn by Agent Kleinpaste about the Rochester facility led defendant to waive his rights. Accepting as true much of defendant's testimony concerning the hesitancy that he had about answering the questions, and the way in which these potential "carrots" were offered to him, the undersigned finds no impropriety or overreaching by the investigating officer. Defendant's decision may have been influenced in part by reaching the conclusion that it was in his best interests to cooperate with the investigation. However, there is nothing improper in this so long as no false promises were made to him and his ability to make a rational decision was not overborne.

The defendant admitted that no promises were made to him in exchange for his cooperation. Defendant recited only general statements concerning benefits which might accrue to him if he cooperated. Defendant did not testify for example that he was told he would receive a lighter sentence or that the charges would be dismissed if he cooperated. Cf. Williams v. Withrow, 944 F.2d 284 (6th Cir. 1991), cert. granted, 112 S. Ct. 1664 (1992). An agent's suggestion that cooperation may have positive effects does not

render a statement involuntary. Guerrero, supra, at 1366; Ballard, supra, at 1063; Rutledge, supra, at 1130; United States v. Shear, 762 F.2d 397, 401-02 (4th Cir. 1985). At the time the statement was made, it remained to be seen whether defendant would receive a two-point reduction in his guidelines score for cooperation. Defendant was not promised assignment to Rochester. Defendant conceded that the agent merely "hinted" that defendant might be sent there due to the nature of the crime he had been charged with. I find nothing improper about this, since there is nothing in the record suggesting that the agent knew otherwise.

In the instant action, I find no evidence that false promises were made to the defendant or that the agent played on the defendant's "ignorance, his anxieties, his fears and his uncertainties" to an impermissible extent. Defendant's testimony suggests that though he may have experienced some initial hesitancy about cooperating, he considered his options and ultimately arrived at a decision to confess. In the opinion of the undersigned, the record does not support a conclusion that defendant's power to make a rational decision was overborne by statements or suggestions made by Agent Kleinpaste.

In summary, I recommend that the court find that the defendant's participation in the interview with Agent Kleinpaste on August 1, 1991, was the product of a knowing and intelligent waiver, and was not coerced by improper government influences. For the foregoing reasons, the undersigned recommends that defendant's motion to suppress be denied.

Objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. Sec. 636(b)(1)(c). Failure to file objections within the specified time waives the right to appeal the district court's order. Thomas v. Arn, 474 U.S. 140 (1985).

Dated: June 22, 1992

TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE